

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HATTIE NEAL and MARY NEAL,       )
                                 )
        Plaintiffs,              )
                                 )        CIVIL ACTION FILE
v.                               )
                                 )        NO. 1:07-cv-1935-TCB
COCHRAN, CHERRY, GIVENS &        )
SMITH, P.C.; THE COCHRAN         )
FIRM MEMPHIS OFFICE; and         )
DAVID McLAUGHLIN,                )
                                 )
        Defendants.              )

## O R D E R

This is an action for "professional malpractice," breach of fiduciary duty, and "contract fraud."  Plaintiffs Mary and Hattie Neal allege that the attorney Defendants did not promptly disclose an alleged conflict of interest and that this allegedly intentional omission caused Plaintiffs to miss the filing deadline for a wrongful death lawsuit they intended to bring against various governmental entities.

Now before the Court is Defendants' motion for summary judgment on all three of Plaintiffs' claims [56].

## I.   Background[1]

On August 1, 2003, Larry Neal, a mentally ill heart patient, died while in custody at the Shelby County Jail in Memphis, Tennessee. Plaintiffs, Hattie Neal, his mother, and Mary Neal, his sister, believed that Larry died because he was not given proper medical and psychiatric care while in custody at the jail. They sought to file a wrongful death lawsuit against the jail, the State of Tennessee, and the State-appointed care home where Larry Neal resided prior to his arrest.

On August 8, 2003, Hattie Neal entered into a contingent fee agreement with the law firm of Cochran Cherry Givens Smith & Bolton, LLP (the "Firm").[2] Under this agreement, the Firm was to investigate and, if warranted by the facts, file a lawsuit against various governmental entities as a result of Larry Neal's tragic death.

---

[1] The following recitation of facts comes from Defendants' Statement of Material Facts as to Which There are no Genuine Issues to Be Tried, filed in support of Defendants' motion for summary judgment [56]. Plaintiffs did not submit any response to Defendants' statement of undisputed material facts, as required by Local Rule 56.1(B)(2)(a). Therefore, the Court must deem Defendants' statement of undisputed material facts to be admitted. *See Brandon v. Lockheed Martin Aeronautical Sys.*, 393 F. Supp. 2d 1341, 1347-48 (N.D. Ga. 2005) (where party fails to properly respond to movant's statement of undisputed material facts, those facts are deemed admitted).

[2] Defendants have presented unrefuted evidence that "Cochran Cherry Givens Smith & Bolton, LLP" is now known as "The Cochran Firm – FLA-TENN, LLP." Defendant David McLaughlin is an attorney with the Firm.

In a "personal injury sign up form" prepared by Defendants, Hattie Neal designated her daughter, Mary Neal, as the point of contact for all communications concerning the firm's representation.[3]

On June 9, 2004, Mary Neal sent Defendant attorney David McLaughlin an e-mail indicating that she had not heard anything about the case and was "concerned that we may be approaching some legal filing deadline in this regard."

McLaughlin promptly replied by e-mail, explaining the status of the case.[4] In this e-mail, McLaughlin advised Mary Neal of the Firm's internal investigation into a possible conflict of interest[5] involving another attorney with the Firm, and that, after seeking the Tennessee Board of Professional Responsibility's guidance on the matter, the Firm had concluded that it did not have a conflict that would preclude it from representing Hattie Neal.

---

[3] There is some dispute as to whether the Firm represented Mary Neal as a result of this designation. Thus, Defendants also allege that there remains a question as to whether Mary Neal has standing to assert a malpractice claim. Because the Court's ruling is unaffected by the resolution of this issue, the Court does not address it.

[4] The parties disagree on the date of McLaughlin's e-mail: Defendants contend that McLaughlin sent his e-mail on June 9, whereas Plaintiffs contend that it was sent on June 14. However, this disagreement is immaterial to the Court's determination and therefore the Court will not attempt to resolve it.

[5] The possible conflict arose from the fact that Julian Bolton, an attorney with the Firm, served as a Shelby County Commissioner and Shelby County owns and operates the Shelby County Jail, a possible defendant in the wrongful death lawsuit.

McLaughlin's e-mail also advised Mary Neal that the statute of limitations in Tennessee for wrongful death claims is one year and that the statute would run at the end of July 2004.

On June 18, 2004, Mary Neal sent McLaughlin a second e-mail, requesting that the Firm cease all work on the case. This e-mail stated that Larry Neal had a large number of relatives in the Memphis area and that it would be more prudent for one of them to pursue the lawsuit at a later date. The e-mail concluded by requesting that McLaughlin confirm receipt of the e-mail and close the case. The e-mail did not contain any complaint about the Firm's conduct in determining whether a conflict existed or the amount of time it took the firm to make that determination.

That same day, McLaughlin responded via e-mail, confirming that the Firm would proceed to close its file and, per Mary Neal's request, not file a lawsuit. Later that day, McLaughlin sent a letter to the Neals via regular and certified mail, confirming that the Firm was closing its file. The letter specifically advised the Neals of the statute of limitations and encouraged them to consult with another attorney immediately if they wanted to pursue any claim.

4

After voluntarily terminating the Firm's services and being advised of the date the statute of limitations would run, the Neals did not file a complaint for wrongful death, and any claims they might have had became time-barred.

Three years later, on August 15, 2007, Plaintiffs filed this action. The complaint contains three counts. In count one, Plaintiffs claim that Defendants committed "professional malpractice" through an allegedly fraudulent and unethical representation of Plaintiffs. In count two, Plaintiffs assert a claim for breach of fiduciary duty, alleging that Defendants failed to timely disclose the Firm's potential conflict of interest. In count three, Plaintiffs assert a claim for "contract fraud."[6] Plaintiffs allege that Defendants told them that the Firm had no conflict of interest and that the Firm would diligently pursue the investigation of the wrongful death action. Plaintiffs assert that Defendants knew that these statements were false and were made with the intention of inducing Plaintiffs to enter into the fee agreement with Defendants. Plaintiffs claim that as a result of Defendants' actions Plaintiffs missed the filing deadline for the wrongful

---

[6] Actually, a misnomer exists in the complaint in that both the breach of fiduciary duty claim and the "contract fraud" claim are denominated as count two. Presumably, Plaintiffs intended to denominate the "contract fraud" claim as count three.

death action.  Plaintiffs assert that they are entitled to $10 million in compensatory and punitive damages for the loss of opportunity to bring the wrongful death action and for Plaintiffs' continuing emotional distress.

On November 26, 2008, Defendants filed a motion for summary judgment [56].  On December 18, Plaintiffs filed their response in opposition to the motion [67].  On January 5, 2009, Defendants filed their reply brief in support of the motion [73].  On January 6, the motion was submitted to the Court.  On January 22, Plaintiffs filed a surreply in opposition to the motion [75].[7]  On January 26, Defendants filed a response to Plaintiff's surreply [76].

## II.   Discussion

### A.   Summary Judgment Legal Standard

Summary judgment is proper when no genuine issue as to any material fact is present and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The movant carries the initial burden

---

[7] Plaintiffs filed their surreply eleven business days after the motion for summary judgment was submitted for consideration to the Court. According to LR 7.1C, NDGa and LR 56.1, NDGa, parties shall not be permitted to file supplemental briefs and materials, with the exception of a reply by the movant, except upon order of the Court. Even though Plaintiffs' surreply is untimely and raises no new issues or arguments that could not have been addressed in Plaintiffs' original response, the Court has fully considered all arguments set forth therein. The Court has also considered Defendants' response to Plaintiffs' surreply.

and must show that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The nonmovant is then required to "go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Resolving all doubts in favor of the nonmoving party, the Court must determine "whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.*

In determining which law applies, a federal district court sitting in diversity must apply the choice of law rules of the forum state. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). For torts in general,

Georgia follows the doctrine of lex loci delicti, which provides that a court must adjudicate tort cases under the law of the state in which the alleged tort was committed. *Fed. Ins. Co. v. Nat'l Distrib. Co.*, 203 Ga. App. 763, 765, 417 S.E.2d 671, 673 (1992) (citing *Ohio S. Express Co. v. Beeler*, 10 Ga. App. 867, 868, 140 S.E.2d 235, 236 (1965)).

Georgia's choice of law system, however, limits the application of another jurisdiction's laws to "statutes and decisions construing those statutes." *Frank Briscoe Co., v. Ga. Sprinkler Co.*, 713 F.2d 1500, 1503 (11th Cir. 1983) (citing *Budget Rent-A-Car Corp. v. Fein*, 342 F.2d 509 (5th Cir. 1965) and *White v. Borders,* 104 Ga. App. 746, 123 S.E.2d 170 (1961)). "When no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law." *Id.*; *accord Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 n. 6 (11th Cir. 1987) ("If a particular state does not have a controlling statute, however, the Georgia choice of law rule requires application of the common law as construed by the courts of Georgia."). This principle applies to both contract claims and tort claims. *See, e.g., Risdon Enters., Inc. v. Colemill Enters., Inc.*, 172 Ga. App. 902, 905, 324 S.E.2d 738, 741 (1982) (applying the rule in a tort case for wrongful death: "'While the courts of this State will follow the decisions

8

of a sister State construing the statutes thereof, they are not bound by the interpretation placed upon the common law by the courts of other States.'" (quoting *Lay v. Nashville, Chattanooga, & St. Louis Ry. Co.*, 131 Ga. 345, 345, 62 S.E. 189, 189 (1908)).

Plaintiffs have not alleged violation of any foreign statute, nor do they contend that application of Georgia law would be inconsistent with due process. Thus, the Court will apply Georgia law to Plaintiffs' claims.

### B.   Analysis

#### 1.   Count One: "Professional Malpractice"[8]

In count one of their complaint, Plaintiffs assert a claim for "professional malpractice," alleging that Defendants engaged in fraudulent and unethical activity by failing to timely disclose a potential conflict of interest and by falsely informing Plaintiffs that they were diligently pursuing the wrongful death action. Plaintiffs allege that this activity caused them to miss the filing deadline for their wrongful death action.

---

[8] Ordinarily, a malpractice claim against an attorney is denominated as a claim for professional negligence. In count one of their complaint, however, Plaintiffs denominate their claim as one for "professional malpractice." In addition, Plaintiffs apparently allege elements of both negligence and fraud in support of this claim. The Court will consider the negligence elements in this portion of the order, and will address the fraud elements in the portion of the order evaluating the "contract fraud" count of the complaint.

In their motion for summary judgment, Defendants deny any malpractice and contend that Plaintiffs have produced no facts demonstrating that any act or omission on their part was the proximate cause of Plaintiffs' alleged injuries.  Further, Defendants contend even if proximate cause would have otherwise existed, Plaintiffs' own intervening acts severed any causal link between Defendants' alleged negligence and Plaintiffs' alleged injury.

### a.    Legal Standard

Under Georgia law, a plaintiff asserting a malpractice claim has the burden of establishing that (1) she employed the defendant attorney; (2) the attorney failed to exercise ordinary care, skill and diligence; and (3) such negligence was the proximate cause of damage to the plaintiff. *Rogers v. Norvell*, 174 Ga. App. 453, 457, 330 S.E.2d 392, 396 (1985).

In the present case, it is undisputed that Plaintiffs engaged Defendants to serve as their attorney.  Further, the Court will assume for the purposes of the present Order that Defendants' conduct was negligent. The question before the Court is whether Plaintiffs have demonstrated the requisite proximate cause between Defendants' conduct and Plaintiffs' alleged injuries.

Proof that the attorney's negligence was the proximate cause of the plaintiff's harm is necessary for recovery. *See, e.g., Perry v. Ossick*, 220 Ga. App. 26, 28-29, 467 S.E.2d 604, 606-07 (1996); *Jaraysi v. Soloway*, 215 Ga. App. 531, 532, 451 S.E.2d 521, 522 (1994). "In other words, assuming without deciding that [defendant] was negligent, [plaintiff] must show that, but for this negligence, he would have won a [favorable] verdict . . . and would have received an award of damages." *Ross v. Edwards*, 253 Ga. App. 773, 773, 560 S.E.2d 343, 344 (2002).

While the question of proximate cause is typically a jury question, "in plain and undisputed cases the court may make the determination as a matter of law." *Black v. Ga. S. & Fl. Ry. Co.*, 202 Ga. App. 805, 807, 415 S.E.2d 705, 707 (1992). Thus, in professional negligence cases, courts have routinely held that summary judgment is proper where the client has failed to establish that her attorney's negligence was the proximate cause of her injuries. *See, e.g., Thornton v. Mankovitch*, 277 Ga. App. 221, 223, 626 S.E.2d 189, 192 (2006) ("Even assuming there was some violation of the conflict of interest rules, [the clients'] claims still fail because they failed to produce any evidence that an alleged violation of the conflict of interest rules was the proximate cause of damage to them."); *Ross*, 253 Ga. App. at

774 (concluding that summary judgment was proper where the plaintiff had failed to establish that the alleged negligence caused the harm).

Another important consideration in the proximate cause analysis is whether there has been an intervening act that severs the causal link between a defendant's conduct and a plaintiff's injury. Under Georgia law, "[i]t is well settled that there can be no proximate cause where there has intervened between the act of the defendant and the injury to the plaintiff, an independent, intervening, act of someone other than the defendant, which was not foreseeable by defendant, was not triggered by defendant's act, and was sufficient of itself to cause the injury." *Finny v. Machiz*, 218 Ga. App. 771, 772, 463 S.E.2d 60, 60 (1995) (citations omitted). "Where the evidence is plain, the question of whether an act constitutes the intervening and superseding cause of an injury is a question of law." *Olympia Servs., Inc. v. Sherwin Williams Co.*, 224 Ga. App. 437, 439, 480 S.E.2d 883, 885 (1997).

In the legal malpractice context, Georgia courts have held that when a client's claim remains viable after the attorney's alleged negligence, acts or omissions on the part of the client can amount to intervening acts sufficient to sever proximate cause.

A case on point is *White v. Rolley*, 225 Ga. App. 467, 484 S.E.2d 83 (1997). White, an attorney, filed a personal injury suit on behalf of his client, Rolley, on November 13, 1989, one day before the limitations period was to expire. The complaint named three defendants: Simpson, Favors, and C & H Hauling. Favors was served on November 29, 1989; Simpson on March 14, 1990; and C & H on August 1, 1990.

In May 1990, Favors filed a motion for summary judgment, contending that he was an improper party. Around this time, White discussed with Rolley that there had been difficulty in serving Simpson and C & H, and that after taking Favors' deposition it was apparent that C & D Dump Truck, not C & H, was the proper party. Rolley responded to this information by firing White and retaining new counsel.

After service had been perfected on all three defendants, Simpson and C & H also filed motions to dismiss and/or for summary judgment. Ultimately, the court granted the motions, finding in part that Favors and C & H were not proper parties and that service on Simpson was insufficient because it was not effected with due diligence. Rolley filed a notice of appeal, but later settled with the defendants.

Rolley then sued White for malpractice, alleging that his settlement was reduced by White's failure to timely serve the defendants and develop evidence sufficient to keep Favors and C & H in the case.  White filed a motion for summary judgment, which the trial court denied.  On appeal, the Georgia Court of Appeals reversed, holding that White's failure to timely serve the defendants was not the proximate cause of the dismissal of Rolley's personal injury action.

The court first noted that "[t]he 'viability' of a given claim in the present context refers only to the question of whether further litigation of that claim may lead to a favorable result *as of the time prior counsel was dismissed from the case.*"  *Id.* at 468, 484 S.E.2d at 85 (quoting *Huntington v. Fishman,* 212 Ga. App. 27, 30, 441 S.E.2d 444, 444 n.2).  The court found that at the time of the termination of White's representation, Rolley's case was still viable because it could have been voluntarily dismissed and then re-filed.  The court found that the intervening act of Rolley and his new counsel choosing not to dismiss and re-file rendered White's negligence "too remote to satisfy the proximate cause requirement for a legal malpractice claim."  *Id.* at 469, 484 S.E.2d at 86; *see also Mauldin v. Weinstock,* 201 Ga. App. 514, 518-19, 411 S.E.2d 370, 373 (1991)

(holding that because the underlying suit remained viable after the date of the attorney's alleged negligence, the client severed proximate cause by failing to take appropriate action to pursue the claim or otherwise ensure that the case would be decided in his favor).

### b.   Analysis

In the present action, Defendants, as movants, carry the initial burden of showing that there is an absence of evidence that demonstrates that their alleged acts of negligence were the proximate cause of Plaintiffs' injuries.   If Defendants satisfy this burden, in order to avoid summary judgment Plaintiffs must then present competent evidence demonstrating that there is a genuine issue of material fact.   Specifically, Plaintiffs must present competent evidence that the reasonably foreseeable result of Defendants' allegedly negligent or fraudulent activity was that Plaintiffs would not (1) timely file their lawsuit, (2) receive a favorable verdict, and (3) receive an award of damages.

Defendants assert that Plaintiffs have produced no evidence demonstrating that the Firm's disclosure of a possible conflict of interest one and a half months before the statute of limitations ran prevented Plaintiffs from timely filing a wrongful death case after terminating the

15

Firm's services.  This assertion is correct.  Plaintiffs' response brief does not demonstrate the existence of any such evidence.  Instead, Plaintiffs assert that they intended to assert a claim for wrongful death, that they entered into a valid contract with Defendants for legal representation, that Defendants falsely or negligently led them to believe that the Firm was diligently investigating and pursuing their wrongful death claim, and that Defendants disclosed the possibility of a conflict of interest in an untimely fashion.

Plaintiffs' surreply addresses the proximate cause issue more directly. Plaintiffs assert that they had "no choice" but to terminate the contract with Defendants for two reasons.  First, Plaintiffs allege that their Memphis area relatives did not want to work with Defendants because Defendants had misrepresented to Plaintiffs that they were diligently pursuing the action and had not timely disclosed the alleged conflict of interest.  Plaintiffs assert that because they were not residents of the Memphis area where Larry Neal had spent the majority of his adult life, Larry's Memphis relatives were better suited to provide Defendants with information relevant to the wrongful death action, and therefore their discomfort with Defendants necessitated terminating the attorney-client relationship.

Second, Plaintiffs assert that upon realizing that Defendants were not diligently pursuing the action, Plaintiffs contacted other attorneys to determine if they could work on the case.  Plaintiffs contend that these attorneys informed Plaintiff Mary Neal that they could not represent Plaintiffs while they were still represented by Defendants.  Plaintiffs further allege in their surreply that even after terminating the relationship with Defendants, other lawyers remained unwilling to undertake the representation because six weeks was not enough time "to do all that had to be done to investigate, prepare, and file three lawsuits on Larry Neal's behalf, especially on a contingency fee basis."

The problem with both of Plaintiffs' arguments is that even if they are meritorious, Plaintiffs have still failed to carry their burden of presenting competent *evidence* demonstrating that there is a genuine issue of material fact for trial.  Specifically, Plaintiffs have presented *no* affidavits, deposition transcripts, discovery responses, or other competent evidence demonstrating that the foreseeable result of Defendants' actions was that Plaintiffs would be unable to receive a favorable verdict and an award for damages.  Such evidence is essential in a malpractice action.  *See, e.g.*, *Perry*, 220 Ga. App. at 30, 467 S.E.2d at 608 ("In the absence of evidence

to support the essential element of damages proximately caused by the alleged professional negligence, summary judgment in favor of [the defendant] was appropriate."). Thus, the Court has no choice but to find that as a matter of law Plaintiffs have failed to establish that proximate cause exists between Defendants' alleged conduct and Plaintiffs' alleged injury.

Further, even if Plaintiffs had established that proximate cause would otherwise have existed, Plaintiffs' own intervening act (failing to file the still-viable wrongful death lawsuit within the six-week period between Plaintiffs' termination of Defendants' representation and the running of the statute of limitations) severed any proximate cause between Defendants' actions and Plaintiffs' alleged injury.

The record demonstrates that Plaintiffs were advised on several occasions that the statute of limitations for their wrongful death claim would run on August 1, 2004. The e-mail exchange between Mary Neal and McLaughlin also reflects that Plaintiffs were aware of the need to file the lawsuit within that time period. Additionally, as of June 18, 2004, when Plaintiffs voluntarily terminated their attorney-client relationship with the Firm, they had over six weeks within which to file the wrongful death

action.  Consequently, at that time their wrongful death claim remained viable.

Plaintiffs' failure to file the wrongful death action within the six weeks following the termination of Defendants as counsel constitutes an intervening act sufficient to sever any proximate cause between Defendants' alleged negligence and Plaintiffs' injury.  Thus, the Court finds that Defendants have carried their burden with respect to the intervening act question.

While Plaintiffs passionately assert that they were forced to terminate their relationship with Defendants due to Defendants' conduct, the termination of the relationship is not the relevant intervening act.  As stated above, it is Plaintiffs' *failure to file their wrongful death lawsuit* within the six-week period after terminating the attorney-client relationship that serves as the intervening act that severs any proximate cause between Defendants' alleged negligence and Plaintiffs' injury. Plaintiffs' wrongful death action remained viable after Plaintiffs fired Defendants; Plaintiffs were aware of the deadline created by the statute of limitations; and as a result of Plaintiffs' intervening failure to file a lawsuit during this interim period the wrongful death claim became time-barred.

Plaintiffs have not satisfied their burden of providing competent evidence raising a genuine issue of material fact on this issue. Therefore, the Court has no choice but to conclude that Plaintiffs' decision to not file a wrongful death action severs any proximate cause that would have otherwise existed between Defendants' alleged negligence and Plaintiffs' alleged injury.

Because the Court has found that no proximate cause exists between Defendants' allegedly negligent acts and Plaintiffs' injury, and that even if proximate cause did exist Plaintiffs' intervening acts would have severed any proximate cause, the Court will grant summary judgment in favor of Defendants with respect to the professional malpractice claim.

### 2.   Count Two: Breach of Fiduciary Duty

In the second count of their complaint, Plaintiffs assert that Defendants' conduct amounted to a breach of their fiduciary duty to Plaintiffs. However, Georgia law is clear that in the malpractice context, a claim for breach of fiduciary duty is duplicative of a professional negligence claim. *See, e.g., Oehlerich v. Llewellyn*, 285 Ga. App. 738, 741, 647 S.E.2d. 399, 402 (2007) ("[Plaintiff's] claim for legal malpractice is based on the establishment of a fiduciary attorney-client relationship that he claims was

breached.  His claims for breach of fiduciary duty, breach of contract, and breach of the implied duty of good faith and fair dealing are simply duplications of this legal malpractice claim."); *McMann v. Mockler*, 233 Ga. App. 279, 282 (1998) (affirming trial court's conclusion that plaintiff's claims for breach of contract, breach of implied duty of good faith and fair dealing, and breach of fiduciary duty were merely duplications of her malpractice complaint).

Accordingly, Plaintiffs' claim for breach of fiduciary duty is duplicative of their "professional malpractice" claim.  Because the Court has already concluded that Defendants are entitled to summary judgment on that claim, the Court will also grant Defendants' motion for summary judgment with respect to the breach of fiduciary duty claim.

### 3.    Count Three: "Contract Fraud"

In the third count of their complaint, Plaintiffs assert that Defendants committed "contract fraud."  It is difficult to determine whether Plaintiffs intended to assert a claim for breach of contract or common-law fraud. Defendants assert that under either interpretation of this claim they are entitled to summary judgment.

### a.   Breach of Contract

As discussed above in Section II.B.2, Georgia law is clear that claims for breach of fiduciary duty and for breach of contract are duplicative of claims for professional negligence.  Therefore, as a matter of law, to the extent Plaintiffs intended to assert a claim for breach of contract, such a claim is barred because Plaintiffs' "professional malpractice" claim is barred.  Consequently, the Court will also grant Defendants' motion for summary judgment with respect to the breach of contract interpretation of the "contract fraud" claim.

### b.   Common-Law Fraud

Defendants contend that to the extent Plaintiffs intended to allege a common-law fraud claim, because Plaintiffs cannot demonstrate proximate cause between Defendants' conduct and Plaintiffs' injury, and because Plaintiffs' intervening acts severed any proximate cause that might exist, Defendants are entitled to summary judgment on this interpretation of the claim. Again, Plaintiffs do not address this argument in their reply brief.

In order for a plaintiff to recover in tort for fraud, she must prove "(1) that the defendant made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose

of deceiving the plaintiff; (4) that the plaintiff relied on the representations; (5) that the plaintiff sustained the alleged loss and damage as the proximate result of their having been made." *Martin Burks Chevrolet, Inc. v. McMichen*, 136 Ga. App. 845, 222 S.E.2d 633 (1975).

As stated above, Plaintiffs have failed to provide any evidence demonstrating the existence of proximate cause between Defendants' allegedly negligent or fraudulent activity and Plaintiffs' inability to timely file their wrongful death lawsuit. Thus, the Court finds that as a matter of law, to the extent Plaintiffs intended to assert a claim for common-law fraud, Plaintiffs have failed to establish a necessary element of that claim. Thus, the Court will grant Defendants' motion for summary judgment with respect to the common-law fraud interpretation of the "contract fraud" claim.

### 3.   "The Cochran Firm Memphis Office" Misnomer

Throughout this case, Defendant "The Cochran Firm Memphis Office" has stated that no such entity exists and that Plaintiffs are referring to The Cochran Firm – FLA – TENN, LLP. Defendants have acknowledged that McLaughlin is the registered agent of that entity. Defendants have also indicated that The Cochran Firm – FLA – TENN, LLP would not challenge

service of process if Plaintiffs would amend their complaint or otherwise consent to a correction of the misnomer.

Plaintiffs have not denied that The Cochran Firm Memphis Office and The Cochran Firm – FLA – TENN LLP are one and the same. However, Plaintiffs have repeatedly spurned Defendant's offer, apparently contending that "The Cochran Firm Memphis Office" is a trade name for The Cochran Firm – FLA – TENN LLP and that as such it is susceptible to suit in that name.

The Court accepts Plaintiffs' argument that the two entities are one and the same. Thus, the Court's decision to grant summary judgment in favor of all Defendants, including The Cochran Firm Memphis Office, will also apply to The Cochran Firm – FLA – TENN LLP.

## III.   Conclusion

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment [56].

IT IS SO ORDERED this 9th day of February, 2009.

Timothy C. Batten, Sr.
United States District Judge

24